**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| | ) | |
| WP COMPANY LLC | ) | |
| d/b/a THE WASHINGTON POST, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-2622-ABJ |
| | ) | |
| SPECIAL INSPECTOR GENERAL FOR | ) | |
| AFGHANISTAN RECONSTRUCTION, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

---

## DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.      SIGAR Properly Applied The FOIA's Exemptions .......................................... 2

      A.      SIGAR Properly Withheld Information Under Exemption 3 .................... 2

           a.      Inspector General Act of 1978 ............................................. 3

           b.      10 U.S.C. § 130b ................................................................. 5

           c.      National Security Act of 1947 .............................................. 6

      B.      SIGAR Properly Withheld Information Under Exemption 7(D) ............. 8

      C.      SIGAR Properly Withheld Information Under Exemption 6 & 7(C) ....... 10

           a.      Plaintiff improperly attempts to re-litigate the informants and third parties' privacy interests, an issue this Court already resolved .................................... 11

           b.      Plaintiff fails to establish a significant public interest in the remaining information and that such interest outweighs the individuals' privacy interests ............................................................... 14

      D.      SIGAR Properly Withheld Information Under Exemption 1 .................. 22

      E.      SIGAR Properly Withheld Information Under Exemption 5 .................. 26

           a.      SIGAR Properly Withheld Information Pursuant to the Deliberative Process Privilege ................................................ 26

           b.      SIGAR Properly Withheld Information Pursuant to the Presidential Communications Privilege ................................ 30

               i.      SIGAR Did Not Waive Its Right To Assert the Presidential Communications Privilege in 6 Documents At This Stage of the Proceedings. .......................... 31

               ii.      The Presidential Communications Privilege Applies to Protect Limited Material in 6 Documents. ................... 33

II.      Plaintiff Has Failed To Meet Its "High" Burden to Establish That the Withheld Information Has Been Waived Through Prior Disclosure. ................................. 36

i

CONCLUSION.................................................................................................................... 41

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA*,
   710 F.3d 422 (D.C. Cir. 2013) ................................................................. 36

*ACLU v. Dep't of Def.*,
   628 F.3d 612 (D.C. Cir. 2011) ........................................................... 26, 38

*ACLU v. Dep't of Justice*,
   640 F. App'x 9 (D.C. Cir. 2016) .................................................. 25, 37, 40

*Am. Oversight v. Dep't of Justice*,
   401 F. Supp. 3d 16 (D.D.C. 2019) .......................................................... 20

*Ancient Coin Collectors Guild v. Dep't of State*,
   641 F.3d 504 (D.C. Cir. 2011) ................................................................ 28

*Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*,
   830 F.2d 331 (D.C. Cir. 1987) .................................................................. 3

*August v. FBI*,
   328 F.3d 697 (D.C. Cir. 2003) ................................................................ 32

*Bast v. Dep't of Justice*,
   665 F.2d 1251 (D.C. Cir. 1981) .............................................................. 12

*Beck v. Dep't of Justice*,
   997 F.2d 1489 (D.C. Cir. 1993) .................................................. 16, 17, 18

*Billington v. Dep't of Justice*,
   69 F. Supp. 2d 128 (D.D.C. 1999) .......................................................... 14

*Boehm v. FBI*,
   948 F. Supp. 2d 9 (D.D.C. 2013) ...................................................... 36, 37

*Bullock v. FBI*,
   577 F. Supp. 2d 75 (D.D.C. 2008) ............................................................ 9

*Campo v. Dep't of Justice*,
   No. 19-cv-00905, 2020 WL 3966874 (W.D. Mo. July 13, 2020) ...................................... 13, 37

*Canning v. Dep't of Justice,*
    567 F. Supp. 2d 85 (D.D.C. 2008) ...................................................................... 14

*CIA v. Sims,*
    471 U.S. 159 (1985) .............................................................................................. 3

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice,*
    978 F. Supp. 2d 1 (D.D.C. 2013) ........................................................... 12, 17, 19

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ................................................... 26, 27, 28, 29

*Cobar v. Dep't of Justice,*
    81 F. Supp. 3d 64 (D.D.C. 2015) ................................................................. 9, 10

*Cottone v. Reno,*
    193 F.3d 550 (D.C. Cir. 1999) .......................................................................... 40

*CREW v. Dep't of Justice,*
    846 F. Supp. 2d 63 (D.D.C. 2012) .................................................................... 18

*Ctr. for Investigative Reporting v. U.S. CBP,*
    436 F. Supp. 3d 90 (D.D.C. 2019) .................................................................... 35

*Darui v. U.S. Dep't of State,*
    798 F. Supp. 2d 32 (D.D.C. 2011) .................................................................... 24

*Davis v. Dep't of Justice,*
    968 F.2d 1276 (D.C. Cir. 1992) ............................................................. 36, 39, 40

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989) ..................................................................................... *passim*

*Elec. Privacy Info. Ctr. ("EPIC") v. DHS,*
    384 F. Supp. 2d 100 (D.D.C. 2005) ................................................ 12, 15, 16, 17

*Elec. Privacy Info. Ctr. ("EPIC") v. Dep't of Justice,*
    Nos. 19-cv-810, 19-cv-957, 2020 WL 5816218 (D.D.C. Sept. 30, 2020) ....................... *passim*

*Elec. Privacy Info. Ctr. ("EPIC") v. Dep't of Justice,*
    584 F. Supp. 2d 65 (D.D.C. 2008) .................................................................... 38

*Fed. Open Mkt. Comm. v. Merrill,*
    443 U.S. 340 (1979) .......................................................................................... 27

*Fitzgibbon v. CIA*,
　　911 F.2d 755 (D.C. Cir. 1990) ................................................................. 36, 38

*Formaldehyde Inst. v. HHS*,
　　889 F.2d 1118 (D.C. Cir. 1989) ..................................................................... 27

*Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*,
　　656 F.2d 856 (D.C. Cir. 1981) ........................................................................ 18

*Goldberg v. U.S. Dep't of State*,
　　818 F.2d 71 (D.C. Cir. 1987) .......................................................................... 23

*Graff v. FBI*,
　　822 F. Supp. 2d 23 (D.D.C. 2011) ............................................................. 15, 16

*Greenberg v. US. Dep't of Treasury*,
　　10 F. Supp. 2d 3 (D.D.C. 1998) ..................................................................... 38

*Hall v. CIA*,
　　881 F. Supp. 2d 38 (D.D.C. 2012) ................................................................... 6

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
　　243 F. Supp. 3d 155 (D.D.C. 2017) ................................................................ 28

*Higgins v. Dep't of Justice*,
　　919 F. Supp. 2d 131 (D.D.C. 2013) ........................................................... 39, 40

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
　　284 F. Supp. 2d 15 (D.D.C. 2003), *aff'd*, 98 Fed. App'x 8 (D.C. Cir. 2004) ........... 10

*Iglesias v. USAID*,
　　No. 17-cv-285, 2018 WL 4954148 (D.D.C. Oct. 12, 2018), *aff'd,* 824 Fed. App'x 1 (D.C. Cir.
　　2020) ....................................................................................................... 5

*In re Sealed Case*,
　　121 F.3d 729 (D.C. Cir. 1997) ....................................................................... 34

*Judicial Watch, Inc. v. Dep't of Justice*,
　　102 F. Supp. 2d 6 (D.D.C. 2000) .................................................................... 32

*Judicial Watch, Inc. v. Dep't of Justice*,
　　365 F.3d 1108 (D.C. Cir. 2004) .................................................................. 31, 35

*Judicial Watch, Inc. v. Export-Import Bank*,
   108 F. Supp. 2d 19 (D.D.C. 2000) ........................................................ 27

*Judicial Watch, Inc. v. NARA*,
   214 F. Supp. 3d 43 (D.D.C. 2016) ........................................................ 16

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   No. 17-cv-1283, 2020 WL 6939807 (D.D.C. Nov. 25, 2020) ................................ 30

*Judicial Watch, Inc. v. NARA*,
   876 F.3d 346 (D.C. Cir. 2017) ........................................................ 17, 18

*Jurewicz v. U.S. Dep't of Agric.*,
   891 F. Supp. 2d 147 (D.D.C. 2012) ........................................................ 15

*Kensington Rsch. & Recovery v. Dep't of Treasury*,
   No. 10-cv-3538, 2011 WL 2647969 (N.D. Ill. June 30, 2011) ................................ 19

*Kimberlin v. Dep't of Justice*,
   139 F.3d 944 (D.C. Cir. 1998) ........................................................ 38

*King v. Dep't of Justice*,
   830 F.2d 210 (D.C. Cir. 1987) ........................................................ 22

*Larson v. Dep't of State*,
   565 F. 3d 857 (D.C. Cir. 2009) ........................................................ *passim*

*Leopold v. Dep't of Justice*,
   --- F.3d ---, Nos. 19-cv-1278, 19-cv-1626, 2020 WL 5253897
   (D.D.C. Sept. 3, 2020) ........................................................ 34, 35, 36

*Lesar v. Dep't of Justice*,
   636 F.2d 472 (D.C. Cir. 1980) ........................................................ 11

*Mapother v. Dep't of Justice*,
   3 F.3d 1533 (D.C. Cir. 1993) ........................................................ 28, 29

*Martin v. Dep't of Justice*,
   488 F.3d 446 (D.C. Cir. 2007) ........................................................ 15, 16

*Maydak v. Dep't of Justice*,
   218 F.3d 760 (D.C. Cir. 2000) ........................................................ 31

vi

*Mehl v. EPA*,
    797 F. Supp. 43 (D.D.C. 1992) ............................................................ 26

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015) ................................................... 23, 25

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ................................................. 22, 23

*Nat'l Archives & Records Admin. ("NARA") v. Favish*,
    541 U.S. 157 (2004) ................................................................... 15, 18

*Nat'l Sec. News Serv. v. U.S. Dep't of Navy*,
    584 F. Supp. 2d 94 (D.D.C. 2008) ...................................................... 18

*New England Apple Council v. Donovan*,
    725 F. 2d 139 (1st Cir. 1984) ............................................................ 12

*Nishnic v. Dep't of Justice*,
    671 F. Supp. 776 (D.D.C. 1987) ........................................................ 12

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) .......................................................................... 27

*Parker v. Dep't of Justice*,
    934 F.2d 375 (D.C. Cir. 1991) ................................................. 9, 10, 39

*Petrucelli v. Dep't of Justice*,
    153 F. Supp. 355 (D.D.C. 2016) ........................................................ 38

*Protect Democracy Project v. NSA*,
    453 F. Supp. 3d 339 (D.D.C. 2020), *denying hearing en banc*, No. 20-5131,
    2020 WL 4135125 (D.C. Cir. Jul. 7, 2020) ...................................... 34

*Pub. Citizen Health Rsch. Grp. v. U.S. Dep't of Labor*,
    591 F.2d 808 (D.C. Cir. 1978) .......................................................... 12

*Pub. Citizen v. Dep't of State*,
    11 F.3d 198 (D.C. Cir. 1993) ................................................ 1, 26, 37, 40

*Quinon v. FBI*,
    86 F.3d 1222 (D.C. Cir. 1996) .......................................................... 18

vii

*Reliant Energy Power Generation v. FERC*,
   520 F. Supp. 2d 194 (D.D.C. 2007) ....................................................... 31

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) ........................................................................... 28

*Rosenberg v. Dep't of Def.*,
   442 F. Supp. 3d 240 (D.D.C. 2020) ....................................................... 30

*Russell v. Dep't of the Air Force*,
   682 F.2d 1045 (D.C. Cir. 1982) .................................................. 28, 29, 30

*Ryan v. Dep't of Justice*,
   617 F.2d 781 (D.C. Cir. 1980) ............................................................. 31

*SafeCard Servs. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ....................................................... 15, 20

*Schoenman v. FBI*,
   573 F. Supp. 2d 119 (D.D.C. 2008) ....................................................... 13

*Senate of P.R. v. Dep't of Justice*,
   823 F.2d 574 (D.C. Cir. 1987) ............................................................. 32

*Shapiro v. Dep't of Justice*,
   No. 12-cv-313, 2020 WL 3615511 (D.D.C. July 2, 2020) ......................... 38

*Shaw v. FBI*,
   749 F.2d 58 (D.C. Cir. 1984) ............................................................... 10

*Smith v. CIA*,
   393 F. Supp. 3d 72 (D.D.C. 2019) ......................................................... 20

*Stern v. FBI*,
   737 F.2d 84 (D.C. Cir. 1984) ............................................................... 18

*Stonehill v. IRS*,
   558 F.3d 534 (D.C. Cir. 2009) ............................................................. 32

*United States v. Nixon*,
   418 U.S. 683 (1974) ........................................................................... 29

*Van Atta v. Def. Intel. Agency*,
   No. 87-cv-1508, 1988 WL 73856 (D.D.C. July 6, 1988) .......................... 23

*Weisberg v. Dep't of Justice*,
   745 F.2d 1476 (D.C. Cir. 1984), *aff'd in part remanded on other grounds*, 848 F.2d
   1265 (D.C. Cir. 1988) ........................................................................................ 13, 38

*Whalen v. U.S. Marine Corps.*,
   407 F. Supp. 2d 54 (D.D.C. 2005) ........................................................................... 38

*Williams v. FBI*,
   No. 91-cv-1054, 1997 WL 198109 (D.D.C. Apr. 16, 1997) ...................................... 32

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) .................................................................................. 41

*WP Co. LLC v. Small Business Admin. ("SBA")*,
   Nos. 20-cv-1240, 20-cv-1614, 2020 WL 6504534 (D.D.C. Nov. 5, 2020) ............... 17

**Statutes**

5 U.S.C. App. 3 § 7 .......................................................................................................... 3, 8

5 U.S.C. § 552 .................................................................................................................... 8

10 U.S.C. § 130b ......................................................................................................... 3, 5, 6

50 U.S.C. § 3024 ............................................................................................................ 3, 6

**Executive Orders**

Classified National Security Information,
   Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ....................... 21, 22, 24

**Other Authorities**

Craig Whitlock, Jenn Ableson, and Meryl Kornfield, *Responses from people featured in The
   Afghanistan* Papers, THE WASHINGTON POST (Dec. 9, 2019),
   https://www.washingtonpost.com/investigations/responses-from-people-featured-in-the-
   afghanistan-papers/2019/12/08/086864aa-0bed-11ea-97ac-a7ccc8dd1ebc_story.html. ............ 7

**INTRODUCTION**

In accordance with the Court's Opinion and Order, Defendant, Special Inspector General for Afghanistan Reconstruction ("SIGAR"), has supplemented its justifications and demonstrated that it has properly invoked FOIA's Exemptions 1, 3, 5, 6, 7(C), and 7(D).  SIGAR has followed the strictures of the Court's Order.  Throughout this litigation, SIGAR has made concerted efforts to disclose as much information as possible, even making discretionary releases of large swaths of information.  So much information has been released that the Washington Post's ("Post" or "Plaintiff") only remaining challenges appear to be withholdings in a limited number of records of interviews ("ROIs").  *See* Plaintiff's Renewed Cross-Motion for Summary Judgment and Opposition to Defendant's Renewed Summary Judgment Motion ("Pl's MSJ"), ECF No. 34, at 9 n.2, 40; Fifth Declaration of Michael A. Hubbard ("Fifth Hubbard Decl.") ¶ 22 (noting that information in 11 ROIs are being withheld pursuant to Exemption 5).  There is much that Plaintiff no longer disputes such as SIGAR's withholding of 8 audio recordings, the locations of interviews, and the interview codes pursuant to Exemptions 6 and 7(C).  *See generally* Pl's MSJ at 8-19.

Plaintiff attempts to punish SIGAR for making discretionary disclosures, arguing that the limited information redacted in the records should also have been released, particularly the identity of SIGAR's sources.  Such an argument would only serve to discourage the government from making discretionary disclosures in the future.  *See Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993) (noting the "perverse theory that a forthcoming agency is less to be trusted . . . than an unyielding one" and that punishing agencies for voluntarily disclosing information would "creat[e] an incentive against disclosure.").  Release of the identity of SIGAR's sources would also discourage individuals from cooperating with future inspector generals like SIGAR,

whose fulfillment of their statutory duties depend on receiving information from others.  Through the Inspector General Act of 1978 and other statutes, Congress decided it was in the public interest to provide protection to individuals who come forward to inspector generals with information.  The Post, a news organization that frequently relies on confidential sources, should understand the importance of confidentiality to encourage sources who fear recrimination or retribution to nevertheless come forward.

Plaintiff has failed to meet its burden to demonstrate a significant public interest in the withheld information in each ROI that outweighs the privacy interest at stake.  Plaintiff has similarly failed to meet its burden to show that the withheld information has been waived through prior disclosure.  The State Department has supplemented the record with sufficient information to demonstrate the fourth requirement for classification of national security information to withhold information pursuant to Exemption 1.  SIGAR has also sufficiently supplemented the record to demonstrate that its withholding of limited information on behalf of the National Security Council ("NSC") in 11 ROIs is proper pursuant to Exemption 5.  For these and the other reasons discussed below, the Court should deny Plaintiff's renewed cross-motion for summary judgment and grant Defendant's renewed motion for summary judgment.

## ARGUMENT

## I.   SIGAR Properly Applied The FOIA's Exemptions

As SIGAR explains in its opening memorandum and below, it has properly applied FOIA's exemptions to withhold a limited amount of information within the documents still at issue.  Each of the withholdings logically falls within the scope of the Exemptions, and Plaintiff has failed to point to "contrary evidence in the record."  *See Larson v. Dep't of State*, 565 F. 3d 857, 862 (D.C.

Cir. 2009).   There is significant overlap in the FOIA exemptions applied to the withheld information, especially amongst Exemptions 3, 6, 7(C), and 7(D).  This Court need not consider the applicability of one exemption to the extent it upholds SIGAR's withholdings under another exemption.  *See id.* at 862-63.

### A.  SIGAR Properly Withheld Information Under Exemption 3

Pursuant to Exemption 3, SIGAR relied on three statutes that exempt information from release under FOIA: section 7(b) of the Inspector General Act of 1978, as amended, 5 U.S.C. App. 3 § 7(b); 10 U.S.C. § 130b on behalf of the U.S. Special Operations Command ("USSOCOM"); and the National Security Act of 1947, as amended ("National Security Act"), 50 U.S.C. § 3024(i)(1) on behalf of the U.S. Central Command ("USCENTCOM") and the State Department.  This Court previously held that the first prong of the inquiry was satisfied: that all three statutes are properly invoked as exempting statutes under Exemption 3.   Memorandum Opinion ("Mem. Op."), ECF No. 28, at 32-33.  This Court, therefore, need only consider whether the withheld material falls within the scope of each statute.  *See CIA v. Sims*, 471 U.S. 159, 167-68 (1985); *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).  As described below and in its opening memorandum, SIGAR has also satisfied this second prong.

### a.  Inspector General Act of 1978

Plaintiff's arguments that SIGAR's withholdings fall outside the scope of the Inspector General Act of 1978 ("IG Act") lack merit.  Plaintiff claims that the IG Act does not cover the withheld information because not all of the documents at issue involve "the possible existence of an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste

of funds, abuse of authority or a substantial and specific danger to the public health and safety."
5 U.S.C. App. 3 § 7(a) (emphasis added); Pl's MSJ at 33-34. Plaintiff's unsupported and unduly narrow reading ignores the plain language of the statute. The IG Act protects information regarding the "possible" not "actual" existence of such unlawful activities. 5 U.S.C. App. 3 § 7(a), 7(b) ("the *possible* existence of an activity constituting a violation of law, rules, or regulations . . . ") (emphasis added). More importantly, such argument flies in the face of this Court's holding that the records were compiled for law enforcement purposes. Mem. Op. at 21-22. This Court already held that the records were created to further SIGAR's statutory mission to prevent and detect waste, fraud, and abuse in U.S.-funded reconstruction programs and operations in Afghanistan. *Id.* (quoting or citing Declaration of Michael A. Hubbard ("Hubbard Decl."), ECF No. 19-4, ¶ 5-6, 9, 63). Given this holding, Plaintiff cannot now argue that some of those records fall outside the scope of the IG Act, an argument which is belied by the record in any event. *See* Hubbard Decl. ¶ 5-6, 9, 63-66 (Lessons Learned Program interviews were conducted in order to further SIGAR's statutory mission to prevent and detect waste, fraud, and abuse and to make recommendations to prevent such waste, fraud, and abuse).

Plaintiff's second argument that the IG Act only protects "SIGAR employees who are making complaints or providing information" is similarly disingenuous. Pl's MSJ at 35; *see id.* at 34-35. Plaintiff, who claims to know the identity of the informants, also knows that only approximately three of the informants are SIGAR employees. *See*, *e.g.*, Pl's MSJ at 20 (claiming that the informant in SIGAR-LL04-00010 is 'clearly former U.S. Ambassador to Afghanistan Ronald Neumann."); Fifth Hubbard Decl. ¶ 27. Rather than the typical inspector general who is housed within a specific agency to investigate that particular agency, SIGAR's authority to

4

investigate reaches broadly across the U.S. government because multiple entities within the U.S. government are involved in U.S. reconstruction efforts in Afghanistan.   Fourth Declaratin of Michael A. Hubbard ("Fourth Hubbard Decl."), ECF No. 32-2, ¶ 50; *see id.* ¶¶ 47-51; Hubbard Decl. ¶ 9. Contrary to Plaintiff's assertion, this Court's footnote in its prior opinion does not address the "establishment" question.   Mem. Op. at 33 n.14; Pl's MSJ at 35; *see* D's MSJ at 11-12.

There is limited case law interpreting the IG Act, but Plaintiff can find none to support any of its arguments, and *Iglesias v. USAID*, supports SIGAR's position.   No. 17-cv-285, 2018 WL 4954148, at *8-9 (D.D.C. Oct. 12, 2018), *aff'd*, 824 Fed. App'x 1 (D.C. Cir. 2020) (per curiam) (affirming district court's finding that the Foreign Service Grievance Board correctly determined that the IG Act prohibited USAID-OIG from disclosing a source's identity without that source's consent).   In *Iglesias*, the court upheld the agency's decision to keep a complainant's identity anonymous, rejecting the same line-drawing that Plaintiff attempts to do here regarding the scope of the Act. *Id.* There, as here, the plaintiff sought the source's identity, even though it had already received the information the source had provided.   *Id.; see also* Mem. Op. at 26 (noting that the public "interest has been largely served by the release of the substantive information contained in the ROIs[.]").   The court found that, "irrespective of whether the source is an 'employee' under section 7(b)," the legislative history makes clear that Congress was committed to "assur[ing] a free flow of information to the [Inspector General]," expecting disclosure of a source "only in the rarest of circumstances" and that sources have an "interest in remaining anonymous both in the context of the IGA and beyond." *Iglesias*, 2018 WL 4954148, at *8-9.  For these reasons as well as those in its opening brief, SIGAR's IG Act withholdings are proper.

### b.  10 U.S.C. § 130b

Plaintiff does not dispute that SIGAR's 10 U.S.C. § 130b withholdings on behalf of USSOCOM are proper.  Pl's MSJ at 33-36.  It only challenges the withholding of the informant's name pursuant to 10 U.S.C. § 130b in one document, SIGAR-LL-07-00078, because it claims that informant's identity is already in the public domain.  *See* Pl's MSJ at 33-36.  As discussed below, that withholding is proper because Plaintiff has not met its burden to establish that the text of SIGAR-LL-07-00078 is as specific and matches the text of page 115 of the May 2018 report.  *Infra* at 37-42.  Accordingly, SIGAR's redactions of personally identifying information of certain military personnel working in sensitive units are properly within the scope of 10 U.S.C. § 130b and should be upheld.  *See* Declaration of James. C. Boiselle ("Boiselle Decl."), ECF No. 19-9, ¶ 23; Ex. D to Boisselle Decl. at 32-35; Fourth Hubbard Decl. ¶ 36; *Hall v. CIA*, 881 F. Supp. 2d 38, 66 (D.D.C. 2012) (finding Exemption 3 satisfied where agency declaration stated "that the only information withheld . . . under 10 U.S.C. § 130b [was] the names of individuals assigned to routinely deployable units").

### c.  National Security Act of 1947

Pursuant to the National Security Act of 1974, as amended, 50 U.S.C. § 3024(i)(l),  SIGAR withheld certain information that would reveal intelligence sources and methods in one document on behalf of the U.S. Central Command ("USCENTCOM"), SIGAR-(b)(1)-00183-188, and in approximately 20 documents on behalf of the State Department. *See* Hubbard Decl. ¶ 38; Third Declaration of Eric F. Stein ("Third Stein Decl.") ¶¶ 12, 13; Declaration of Eric F. Stein ("Stein Decl."), ECF No. 19-6, ¶¶ 13-15; Supplemental Declaration of Eric F. Stein ("Stein Suppl. Decl."), ECF No. 23-3, ¶¶ 6-25; Declaration of Mark H. Herrington ("Herrington Decl."), ECF

6

No. 19-8, ¶ 5.  Plaintiff does not dispute that SIGAR's withholdings on behalf of USCENTCOM in SIGAR-(b)(1)-00183-188 are proper.  *See* Pl's MSJ at 36.  Similarly, Plaintiff does not dispute that SIGAR's withholdings on behalf of the State Department fall within the scope of the National Security Act of 1974, as amended.  *Id.*  Nor does Plaintiff challenge the State Department's submissions in response to this Court's order to provide "more details on who at the agency has the authority to invoke the National Security Act, and who was involved in making the redactions in this case."  Mem. Op. at 40; *id.*; Defendant's Renewed Motion for Summary Judgment ("D's MSJ"), ECF No. 32-1, at 13-15; *see generally* Department of State Supplemental Vaughn Index ("State Suppl. Vaughn"), ECF No. 32-5; Declaration of Ellen E. McCarthy, Assistant Secretary of State for the Bureau of Intelligence and Research ("McCarthy Decl."), ECF No. 32-6; *see also* Declaration of Eric F. Stein ("Stein Decl."), ECF No. 19-6, ¶¶ 13-15; Supplemental Declaration of Eric F. Stein ("Stein Suppl. Decl."), ECF No. 23-3, ¶¶ 6-25.

Rather, Plaintiff argues that SIGAR cannot withhold the identity of the informant in SIGAR-(b)(1)-00062 pursuant to the National Security Act because it claims the informant is Ambassador Richard Haass who it alleges "expressly acknowledged that he was a Lessons Learned interviewee."  Pl's MSJ at 36.  Plaintiff's argument is without merit.  First, the Exemption 3 withholding of the informant's identity in SIGAR-(b)(1)-00062 is pursuant to the IG Act, not the National Security Act.  Fifth Hubbard Decl. ¶ 29; Third Stein Decl. ¶ 13.   Second, in the Responses article Plaintiff cites, Pl's MSJ at 36, Ambassador Haass does not "expressly" acknowledge that he is the informant in SIGAR-(b)(1)-00062.  *See* Responses article.[1]  Rather,

---

the article consists of the Plaintiff's speculation that Haass is the informant in a particular ROI as well as an alleged "additional comment" from Haass that does not match and is not as specific as the text of that ROI. *Id.* As discussed below, this is insufficient to meet Plaintiff's burden to establish waiver. *Infra* at 37.

### B. SIGAR Properly Withheld Information Under Exemption 7(D)

SIGAR's Exemption 7(D) withholdings should be upheld. Contrary to Plaintiff's claim that SIGAR is "now opportunistically" asserting Exemption 7(D), Pl's MSJ at 19, SIGAR invoked this exemption to protect the identity and identifying information of its informants when it first moved for summary judgment. *See* SIGAR Memorandum in Support of its Motion for Summary Judgment, ECF No. 19-1, at 34-37; Hubbard Decl. ¶¶ 10, 11, 79-81; Supplemental Declaration of Michael Hubbard ("Hubbard Suppl. Decl."), ECF No. 24-1, ¶ 17; Fourth Hubbard Decl. ¶¶ 42-46; *see also* Mem. Op. 28 n.13. SIGAR's Exemption 7(D) withholdings overlap with its IG Act withholdings pursuant to Exemption 3, but are even broader because they protect the identity and identifying information of all informants who requested confidentiality, not only those who were U.S. government employees of an "establishment" as defined in the IG Act. 5 U.S.C. App. 3 §§ 7(a), (b), 12(2). SIGAR has shown that its withholdings "logically fall[] within" Exemption 7(D), and Plaintiff has failed to point to "contrary evidence in the record." *Larson*, 565 F.3d at 862. Indeed, this Court already held that SIGAR satisfied the Exemption 7 threshold because the records were compiled for law enforcement purposes. Mem. Op. at 21-22; *see* 5 U.S.C. § 552(b)(7). And

---

[1] Craig Whitlock, Jenn Ableson, and Meryl Kornfield, *Responses from people featured in The Afghanistan* Papers, THE WASHINGTON POST (Dec. 9, 2019), *available at* https://www.washingtonpost.com/investigations/responses-from-people-featured-in-the-afghanistan-papers/2019/12/08/086864aa-0bed-11ea-97ac-a7ccc8dd1ebc_story.html.

SIGAR has demonstrated that it provided express assurances of confidentiality to those informants who requested it.   Fourth Hubbard Decl. ¶¶ 44-46; Hubbard Decl. ¶¶ 10, 11, 40, 41, 79, 80; Hubbard Suppl. Decl. ¶ 17.   Plaintiff does not dispute that such express assurances were standard SIGAR practice, Hubbard Decl. ¶ 79, that SIGAR documented such requests on the face of each document, *id.*, or that SIGAR employed a practice of identifying an informant by interview code instead of by name when it promised him or her confidentiality.   *See* Fourth Hubbard Decl. ¶¶ 30-32; Hubbard Decl. ¶¶ 27, 79.

Rather, Plaintiff argues that SIGAR's interviews sounded more like they were conducted under "*journalistic* grounds rules – *i.e.*, a discussion between a reporter and a source, not an informant speaking to a law enforcement officer."   Pl's MSJ at 19.   This argument is simply Plaintiff ignoring SIGAR's status as an inspector general, not a news organization.   Plaintiff appears to be making the same SIGAR "is not law enforcement but information gathering" argument this Court expressly rejected when it found the records at issue were compiled for law enforcement purposes.   Mem. Op. at 21-22 (rejecting Plaintiff's argument and noting that the purpose of the Lessons Learned reports is to make actionable recommendations on law enforcement matters and that "the Lessons Learned Program, while not necessarily operating in pursuit of a criminal investigation, operates in a manner to help serve the law enforcement goals of the agency as a whole.").

Plaintiff's only other argument is that two informants cannot be confidential sources because their identity and information is in the public domain.   Pl's MSJ at 19-20.   Waiver in the Exemption 7(D) context, however, is especially difficult to show because it requires demonstrating that a source "has manifested complete disregard for confidentiality" or that through authorized

9

channels, both the exact information and the fact that the informant gave that information to the government is in the public domain. *Parker v. Dep't of Justice*, 934 F.2d 375, 378 (D.C. Cir. 1991); *see Cobar v. Dep't of Justice*, 81 F. Supp. 3d 64, 72 (D.D.C. 2015) ("To the extent plaintiff is arguing that public knowledge of a confidential source's *identity* precludes application of 7(D) to protect *information provided by* that source, that proposition is clearly wrong.") (emphasis in original); *Bullock v. FBI*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008) ("Exemption 7(D) applies even when the source's identity is no longer a secret."). Nevertheless, SIGAR has agreed to release the withholding of David Mansfield's name in SIGAR-LL-04-00152. Fifth Hubbard Decl. ¶¶ 21, 33. As for the informant in SIGAR-LL-04-00010, Plaintiff has failed to meet its burden to show either a complete disregard for confidentiality or an exact match between the information in the public domain and that sought by Plaintiff. *See Shaw v. FBI*, 749 F.2d 58, 62 (D.C. Cir. 1984) (holding that "[d]isclosure of one piece of information received from a particular party – and even the disclosure of that party as its source – does not prevent that party from being a 'confidential source' for other purposes"); *Parker*, 934 F.2d at 378; *Cobar*, 81 F. Supp. 3d at 72. For these reasons, SIGAR's Exemption 7(D) withholdings are proper.

### C. SIGAR Properly Withheld Information Under Exemption 6 & 7(C)

Given the significant overlap between Exemptions 6 and 7(C) and Exemptions 3 and 7(D), the Court need not reach Exemptions 6 and 7(C) for the withholdings of the informants' identities and identifying information to the extent it finds the withholdings proper pursuant to other exemptions. *See Larson*, 565 F. 3d at 862-63. If the Court reaches Exemptions 6 and 7(C), however, as it must for the withholdings of the third parties' identities and identifying information, Plaintiff's challenges to SIGAR's assertion of these exemptions lack merit. It is noteworthy what

10

Plaintiff no longer disputes.  Pursuant to the Court's order, SIGAR provided additional information to justify its withholding of 8 audio recordings, locations of interviews, and interview codes under Exemptions 6 and 7(C).  *See* D's MSJ at 26-28; Fourth Hubbard Decl. ¶¶ 33-39.  Plaintiff challenged none of these withholdings and cannot do so now.  *See generally* P's MSJ; *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. App'x 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### a.  Plaintiff improperly attempts to re-litigate the informants and third parties' privacy interests, an issue this Court already resolved

Plaintiff mistakes the remaining question in this litigation.  The Court already found that SIGAR had established that the informants have a "*significant* privacy interest" and that the third parties have a "*substantial* privacy interest in keeping their identities private." Mem. Op. at 24-25 (citing Hubbard Decl. ¶¶ 52, 53, 59; Hubbard Suppl. Decl. ¶¶ 13, 29).  Therefore, the Court should ignore Plaintiff's attempt to re-litigate this issue by arguing that the informants and third parties' privacy interests are "minimal" and that SIGAR has somehow "misrepresent[ed] the privacy harm[s.]" Pl's MSJ at 15, 19; *see id.* at 8 (misrepresenting the Court's opinion by claiming it found that the interviewees and third parties "had at least a minimal privacy interest," when in fact the Court described those interests as "significant" and "substantial"); *see also Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("The privacy interest for purposes of Exemption 7(C) is broad.").

Nevertheless, Plaintiff's argument that the privacy harms are overstated because allegedly none of the informants has yet faced retaliation fails.[2] SIGAR need not provide "evidence of actual harms," Pl's MSJ at 16, rather only that "identification of these individuals *conceivably* could subject them to annoyance or harassment." *Lesar v. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (emphasis added) (privacy interest of FBI agents recognized where disclosure of their role in investigating the King assassination "conceivably" could subject them to harassment); *see New England Apple Council v. Donovan*, 725 F. 2d 139, 142 (1st Cir. 1984) (Exemption 7(C) does not require "an *actual* showing of harassment or other harm.") (emphasis in original); *Pub. Citizen Health Rsch. Grp. v. U.S. Dep't of Labor*, 591 F.2d 808, 809 (D.C. Cir. 1978) (per curiam) ("The threat to privacy . . . need not be patent or obvious to be relevant."). Otherwise, "Exemption 7(C) would be eroded as a device for protecting personal privacy if only those persons who have already suffered annoyance or intimidation may benefit from its provision for nondisclosure." *Nishnic v. Dep't of Justice*, 671 F. Supp. 776, 788 (D.D.C. 1987). If the informants' identities were released, Plaintiff would almost certainly publish their identities "on the Internet" subjecting them to annoyance, harassment, and possible job consequences not only now but also in the future. *Elec. Privacy Info. Ctr. ("EPIC") v. DHS*, 384 F. Supp. 2d 100, 117 (D.D.C. 2005); *see* Fifth Hubbard Decl. ¶ 16; Fourth Hubbard Decl. ¶¶ 12, 16, 18, 22, 23, 27, 29. Such threats, harassment, and possible job consequences apply to government employees and private citizens alike.[3]  *See*

---

[2] Equally misplaced is Plaintiff's suggestion that somehow SIGAR should "name" those informants who contacted SIGAR out of concern that their identities might be disclosed, following the publication of *The Post*'s series.  *See* Pl's MSJ at 16 (noting that the informants who expressed concern are "still-unnamed").

[3] Plaintiff's argument that private citizens who were once high-level employees "no longer face *any conceivable* risk of . . . retaliation from the disclosure of their names" lacks merit.  Pl's MSJ

12

Defendant's Response to Plaintiff's Statement of Material Fact ("D's Resp. to Pl's SUMF"), ¶ 11 (quoting Special Inspector General for Afghanistan Reconstruction John F. Sopko's testimony: "These people who spoke to us risked a lot.  And you know what this town is like.  You know what it's like if somebody bad mouths their old boss[.]"); ECF No. 34-6 at 12.

As this Court already found, SIGAR has sufficiently demonstrated "that the informants not only agreed to be interviewed with the understanding that their identities would be kept private, but that many could face serious consequences if their identities were revealed."  Mem. Op. at 24; *see also* Fourth Hubbard Decl. ¶ 16 (noting that following the publication of *The Post*'s Afghanistan series, SIGAR was contacted by a number of informants "who were seriously worried that their identities might be disclosed."); Fourth Hubbard Decl. ¶¶ 15, 16.  As this Court also held, SIGAR sufficiently "identified the harm that third parties identified in the ROIs could plausibly face as a result of being named in the records of a law enforcement agency."  Mem. Op. at 23-24.

As discussed below, *infra* at 37-42, the informants and third parties' privacy interests are not extinguished.  For instance, that Plaintiff claims to be able to "guess" the identities of certain informants is irrelevant and does not diminish their privacy interests.  *See Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984), *aff'd in part remanded on other grounds*, 848 F.2d 1265 (D.C. Cir. 1988); *see Schoenman v. FBI*, 573 F. Supp. 2d 119, 149 (D.D.C. 2008) ("Plaintiff's claim that he personally 'knows' that the individual at issue would not object to the release of his name is legally irrelevant").  Plaintiff merely cites to its own article where it makes its own

---

at 16 n.8 (emphasis added).  Plaintiff ignores that private citizens in fact have a heightened privacy interest because they are "no longer in the spotlight and 'renewed publicity brings with it a renewed invasion of privacy.'" *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 978 F. Supp. 2d 1, 10 (D.D.C. 2013) (citing *Bast v. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981)).

13

"guesses" as to the informants' identities, which is insufficient.   If, as Plaintiff claims, certain informants have "voluntarily spoken to the *Post*," Pl's MSJ at 15 n.7, then Plaintiff must provide SIGAR "with an authorization signed by" each of them consenting to the release of their names and identifying information.  *Campo v. Dep't of Justice*, No. 19-cv-00905, 2020 WL 3966874, at *9 (W.D. Mo. July 13, 2020) (upholding DOJ's Exemption 6 and 7(C) withholdings because plaintiff failed to provide DOJ with a release from the third-party or a death certificate).  Finally, that SIGAR failed to redact third party names in one document, SIGAR-LL-05-00169, out of the hundreds of ROIs, does not eliminate those individuals' privacy interests.  *See* Fifth Hubbard Decl. ¶ 30; *Canning v. Dep't of Justice*, 567 F. Supp. 2d 85, 95 (D.D.C. 2008) (granting in part and denying in part the government's summary judgment motion and finding that agency's inadvertent failure to redact does not strip third party of privacy interests); *Billington v. Dep't of Justice*, 69 F. Supp. 2d 128, 137 (D.D.C. 1999) ("The disclosure of unredacted records due to an administrative error does nothing to diminish the magnitude of the [named individuals'] privacy interests . . . [S]uch a weak reading of 7(C)'s privacy protections would make a mockery of the very purpose of the exemption."), *aff'd in pertinent part*, 233 F.3d 581, 583 (D.C. Cir. 2000).

### b.  Plaintiff fails to establish a significant public interest in the remaining information and that such interest outweighs the individuals' privacy interests

The Court held that it was "inclined to grant summary judgment in favor of [SIGAR] with respect to the withholding of the majority of the interviewees' and third parties' titles, ranks, dates of deployment, and dates of employment."  Mem. Op. at 26.  Because "it [w]as not clear that the privacy interests outweigh[ed] the public interest in every case," the Court ordered SIGAR to "supplement its declaration indicating whether each individual whose identity is being protected

14

could be properly characterized as a 'private citizen' at the time of the interview and/or the events described during the interview, and whether the interviewee or individual named falls within the proper scope of the exemptions." *Id.* at 26-27.  SIGAR provided this supplemental information in its Fourth Hubbard Declaration and SIGAR Third Vaughn to support its reliance on Exemptions 6 and 7(C).  *See* Fourth Hubbard Decl. ¶¶ 27, 43, 44; SIGAR Third Vaughn Index ("SIGAR Third Vaughn"), ECF No. 32-3.  Therein, SIGAR explained that both the informants and the third parties generally fall into four categories at the time of the interview and/or the events described during the interview: (1) private citizens; (2) foreign nationals; (3) low-ranking U.S. government employees; and (4) high-ranking U.S. government employees.  *See* SIGAR Third Vaughn; Fourth Hubbard Decl. ¶¶ 9, 24, 25.  SIGAR described that the largest category was foreign nationals, followed by low-ranking government employees, private citizens, and high-ranking government employees.  Fourth Hubbard Decl. ¶ 9.

Tellingly, Plaintiff fails to meaningfully challenge SIGAR's withholding of the names and identifying information of informants and third parties who were foreign nationals, low-ranking government employees, and private citizens.  *See generally* Pl's MSJ.  Plaintiff provides no response to SIGAR's argument that courts in this Circuit have repeatedly recognized how "difficult" it is to overcome the privacy interest of these groups.[4]  Plaintiff has, accordingly, failed

---

[4] *See* D's MSJ at 23-25; *see, e.g.*, *Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007); *Reporters Comm.*, 489 U.S. at 765 ("[D]isclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind."); *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991) ("[T]he names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) . . . is exempt from disclosure."); *EPIC*, 384 F. Supp. 2d at 115-18 (upholding the government's Exemption 6 assertions because "the public interest in learning the names of [] lower-echelon employees is small" and plaintiff had not demonstrated how knowledge of the names would help it "understand how the agency performs its statutory duties"); *Graff v. FBI*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011) (applying Exemption 7(C) to protect

to meet its "special burden," *Graff v. FBI*, 822 F. Supp. 2d 23, 33 (D.D.C. 2011), to trigger balancing with respect to these categories of informants and third parties; it has neither demonstrated a "significant" public interest sought to be advanced, one "more specific than having the information for its own sake," nor that disclosure of the withheld information in each ROI "is likely to advance that interest." *Nat'l Archives & Records Admin. ("NARA") v. Favish*, 541 U.S. 157, 172 (2004) (noting the requester must make two showings); *see Elec. Privacy Info. Ctr. ("EPIC") v. Dep't of Justice*, Nos. 19-cv-810, 19-cv-957, 2020 WL 5816218, at *9 (D.D.C. Sept. 30, 2020); *Jurewicz v. U.S. Dep't of Agric.*, 891 F. Supp. 2d 147, 156 (D.D.C. 2012) ("[T]here must be proper public interests to even put on the scales" before the Court may balance the interests against each other.). Plaintiff provides only one example of where it claims it needs to know the identity of a low-ranking government employee and provides no examples of where it claims it needs to know the identity of a third party.[5] *See* Pl's MSJ at 17-19.

Plaintiff also fails to meet its "special burden" to trigger balancing with respect to the high-ranking officials. *Graff*, 822 F. Supp. 2d at 33. As with Plaintiff's one example of a low-ranking government employee, Plaintiff provides two examples of high-ranking employees and argues that it needs to know the identity of those informants in order to determine "how much to credit" his or her "perspective." Pl's MSJ at 17-18. But how much weight to give an informant's perspective constitutes "information that does not *directly* reveal the operation or activities of the federal

---

the privacy interests of a foreign national).

[5] Unwitting third parties are especially deserving of protection because it is unlikely they were aware they had been named or what information had been said about them. Hubbard Decl. ¶¶ 29, 53; Fourth Hubbard Decl. ¶¶ 25-28. Courts have thus found that third parties' identifying information is generally categorically exempt from disclosure. *See Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007); *EPIC*, 2020 WL 5816218, at *10-11.

government" and thus "falls outside the ambit of the public interest that the FOIA was enacted to serve." *EPIC*, 384 F. Supp. 2d at 118 (D.D.C. 2005) (emphasis added, internal quotations and citations omitted); *see Beck v. Dep't of Justice*, 997 F.2d 1489, 1493-94 (D.C. Cir. 1993) ("The identity of one or two individual relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct."); *Judicial Watch, Inc. v. NARA*, 214 F. Supp. 3d 43, 63 (D.D.C. 2016) (rejecting plaintiff's argument that information bearing on Hilary Clinton's honesty, credibility, and trustworthiness would serve the objective of FOIA to shed light on an agency's performance of its statutory duties).  Nevertheless, SIGAR has provided additional information for the public to use to evaluate "who" provided the accounts by labeling each informant or third party as a foreign national, high-ranking government employee, etc.  Pl's MSJ at 17-18; *see* SIGAR Third Vaughn;  *EPIC*, 384 F. Supp. 2d at 115-18.

And even if Plaintiff had made the requisite showing to trigger balancing, any minimal interest in knowing the identities of the informants and third parties is greatly reduced because of the voluminous information already in the public domain, as this Court already recognized.[6]  Mem.

---

[6] Plaintiff relies on *WP Co. LLC v. Small Business Admin*. ("*SBA*"), Nos. 20-cv-1240, 20-cv-1614, 2020 WL 6504534 (D.D.C. Nov. 5, 2020) for the proposition that the existence of some information in the public domain does not preclude the existence of a public interest in the release of more information.  Pl's MSJ at 18.  This case is distinguishable on many levels.  Whereas that case involved the Small Business Administration who "expressly told borrowers that their names and loan amounts would be public," *SBA*, 2020 WL 6504534, at *11, here SIGAR, an *inspector general*, provided the informants with assurances of confidentiality.  That case also involved Exemption 6, which provides narrower protections than Exemption 7(C).  *See* D's MSJ at 18-19.  Also decisive in that case was "the well-documented allegations of fraud related to the disbursement and receipt of CARES Act funds," *SBA*, 2020 WL 6504534, at *14, whereas here to SIGAR's knowledge, none of the government employee informants has been accused of misconduct or wrongdoing, Fifth Hubbard Decl. ¶ 31; Fourth Hubbard Decl. ¶ 14, which only "lend[s] weight to [their] privacy interest[s]."  *Citizens for Responsibility & Ethics in Wash.* ("*CREW*") *v. Dep't of Justice*, 978 F. Supp. 2d 1, 10 (D.D.C. 2013).

17

Op. at 26; *see, e.g.*, *Judicial Watch, Inc. v. NARA*, 876 F.3d 346, 350 (D.C. Cir. 2017) (finding any "weighty public interest" to be "greatly reduced . . . because of the voluminous information already in the public domain"). Any such minimal interest does not outweigh the individuals' "substantial" and "significant" privacy concerns. Mem. Op. at 24, 25; *see Beck*, 997 F.2d at 1493-94.

Even if this Court were to conduct balancing, the balance tips in favor of protecting all of the informants and third parties, including the high-ranking officials, for the reasons discussed in SIGAR's opening memorandum. *See* D's MSJ at 25-26; Fourth Hubbard Decl. ¶¶ 10-17. As for the high-ranking government employees, Courts have consistently held that such individuals do not surrender all their privacy rights.[7] SIGAR's logic is not "backward," Pl's MSJ at 16 n.8, but supported by the case law. *See Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981) ("The degree of intrusion [caused by the disclosure] is indeed potentially augmented by the fact that the individual is a well known figure."); *CREW v. Dep't of Justice*, 846 F. Supp. 2d 63, 72 (D.D.C. 2012) ("[O]ur Circuit has noted that holding public office might actually augment the intrusion caused" by disclosure.); *EPIC*, 2020 WL 5816218, at *10-11 (finding that the Justice Department properly redacted identifying information pursuant to Exemption 7(C) of individuals named in the Mueller Report, including public figures such as the President's family, associates, and government officials who solicited publicity and media

---

[7] *See id.*; *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996); *NARA*, 876 F.3d at 350 (affirming district court's finding that draft indictments of Hillary Clinton were properly withheld in full pursuant to Exemption 7(C) because Plaintiff had failed to identify that "'exceptional interests militate in favor of disclosure'") (quoting *Fund for Const. Gov't*, 656 F.2d at 866); *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) ("Neither the deceased's former status as a public official, nor the fact that other pictures had been made public, detracts from the weighty privacy interests involved."); *see also Nat'l Sec. News Serv. v. U.S. Dep't of Navy*, 584 F. Supp. 2d 94, 96 (D.D.C. 2008).

attention).

Plaintiff's reliance on *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) is misplaced. Pl's MSJ at 12, 16. As the D.C. Circuit explained, "*Stern* was decided before the Supreme Court's decision in *Reporters Committee*" and turned on the fact "that wrongdoing ha[d] occurred" by the high-level employee. *Beck*, 997 F.2d at 1493-94 (D.C. Cir. 1993). That is not the case here. Fourth Hubbard Decl. ¶ 14. In fact, the high-level employee informants provided information to SIGAR, an inspector general, not for their own benefit, but for a public purpose. *Id.* The assurances of confidentiality given to these and the other informants only serves to increase their privacy interests. *Se*e, *e.g.*, *Kensington Rsch. & Recovery v. Dep't of Treasury*, No. 10-cv-3538, 2011 WL 2647969, at *9 (N.D. Ill. June 30, 2011); *CREW*, 978 F. Supp. 2d at 10. Plaintiff simply disregards the courage it took for the informants to come forward and share information with SIGAR at great risk to their reputations and livelihoods. *See, e.g.*, Fourth Hubbard Decl. ¶¶ 14, 15, 16; Hubbard Decl. ¶ 58; Hubbard Suppl. Decl. ¶ 16. Disclosure of their identifying information is counter to the public interest because it would discourage individuals from cooperating in the future with inspector generals like SIGAR, whose statutory duties depend on receiving information from others. *See* Fourth Hubbard Decl. ¶ 15; Hubbard Decl. ¶ 42, 49, 81; Hubbard Suppl. Decl. ¶ 27. Without the assurances of confidentiality SIGAR provided, Plaintiff and the public would likely not have learned much of the information already released in the ROIs in the first place. *See* Hubbard Decl. ¶ 49; Hubbard Suppl. Decl. ¶ 29.

Plaintiff also makes three arguments that this Court can readily dismiss. First, it argues that the informants in seven ROIs are high-ranking, not low-ranking employees. Pl's MSJ at 13-14. This appears to be another attempt by Plaintiff to get SIGAR to confirm the identity of certain

19

informants.  SIGAR has released the identity of one of those informants in SIGAR-(b)(1)-00132 "because he clearly and intentionally identified himself and his ROI in an essay he authored." Fifth Hubbard Decl. ¶¶ 20, 33.  As for the other six, SIGAR explains in the Fifth Hubbard Declaration what criteria it used to determine whether an individual was low versus high-ranking and that such a determination is often in the eye of the beholder.[8] *Id.* ¶¶ 13-14.  For instance, SIGAR considered an individual to be "high-ranking" if he or she were appointed by the President and confirmed by the Senate.  SIGAR.  *Id.* ¶ 14.  SIGAR considered a general and admiral to be "high-ranking" but not a lieutenant colonel or colonel.  *Id.*

Second, Plaintiff uses these examples to argue that "SIGAR's declaration in this regard, and *Vaughn* index, are thus submitted in bad faith and should be given no weight."  Pl's MSJ at 14.  Such bare allegations are insufficient to rebut the presumption of good faith accorded to agency affidavits.  *See SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200-01 (D.C. Cir. 1991).  When a plaintiff makes so weighty an accusation, it must provide more than speculation and show credible evidence that an agency's motives were improper.  *See id*; *Smith v. CIA*, 393 F. Supp. 3d 72, 85 (D.D.C. 2019).  Plaintiff has failed to do so here.  That Plaintiff disagrees with seven out of the hundreds of SIGAR's labels is not evidence of bad faith.  Pl's MSJ at 14.  SIGAR made a concerted effort to properly label the informants and third parties pursuant to the Court's order. Fifth Hubbard Decl. ¶¶ 13-14; Mem. Op. at 26-27, 40.  SIGAR has explained its reasoning and where appropriate, released information previously withheld and corrected any errors, which

---

[8]  That an informant may have been interviewed by SIGAR more than once does not mean he or she was a "high ranking" employee.  *See* Pl's MSJ at 14 n.5.  The Court did not instruct SIGAR to label the individuals by how "important" a "figure" they were to SIGAR.  *See id.*; Mem. Op. at 26-27.

serves only to bolster the good-faith presumption.  *See* Fifth Hubbard Decl. ¶¶ 3, 4, 33; *Am. Oversight v. Dep't of Justice*, 401 F. Supp. 3d 16, 26-27 (D.D.C. 2019).

Finally, Plaintiff argues that SIGAR failed to release all "on the record" interviews pursuant to the Court's order.  Pl's MSJ at 9-12.  To the contrary, SIGAR has fully complied with the Court's order and has released any information that had been mistakenly redacted.  *See* Mem. Op. at 24 n.10; Fifth Hubbard Decl. ¶¶ 7, 33 (noting that the informants' identities in SIGAR-LL-07-00017, SIGAR-LL-07-00140, SIGAR-LL-07-00193, and SIGAR-LL-07-00197 are being released).  For the remaining ROIs, it is Plaintiff who ignores that SIGAR is an inspector general, not a news organization.[9]  *See* Fifth Hubbard Decl. ¶¶ 5, 6 & n.1, 7, 9-12; *infra* at 39-40 (discussing nuances of SIGAR's interviews).  The privacy interest belongs to the informants, not SIGAR.  *See Reporters Comm.*, 489 U.S. at 763-65.  As an *inspector general*, SIGAR is required to comply with the strict terms of the request.[10]  Fifth Hubbard Decl. ¶ 12.  As SIGAR explains, in the majority of the ROIs Plaintiff lists, the informant only agreed to speak with SIGAR "on the record" with a caveat.[11]  *Infra* at 39-40 (discussing nuances of SIGAR's interviews); Fifth Hubbard Decl. ¶¶ 4-8, ; Fourth Hubbard Decl. ¶¶ 40, 41; Hubbard Decl. ¶¶ 10-13, 40; Hubbard Suppl. Decl. ¶ 15. This is so in part because the ROIs are merely "raw notes" that may not be accurate.  Fifth Hubbard Decl. ¶ 12; *infra* at n. 17.

---

[9] As SIGAR explains, the discussion in SIGAR-LL-01-00101 "was not typical of SIGAR interviews."  Fifth Hubbard Decl. ¶¶ 9, 10.

[10] As SIGAR explains, Ambassador Burns was one of the informants who requested that SIGAR not quote him by name without his specific approval, although he later gave permission to SIGAR to release the transcript of his interview.  Fifth Hubbard Decl. ¶ 11.

[11] For this and the other reasons describe above, the *Small Business Administration* case Plaintiff relies on is inapposite.  *Supra* at n.6; Pl's MSJ at 12.

For all of these reasons, SIGAR's withholdings are proper pursuant to Exemptions 6 and 7(C).

### D.  SIGAR Properly Withheld Information Under Exemption 1

SIGAR's limited Exemption 1 withholdings on behalf of the State Department are proper. This Court already found that the State Department satisfied the first three requirements for the classification of national security information.   Mem. Op. at 18; *see* Classified National Security Information, Exec. Order No. 13,526 ("E.O. 13,526"), 75 Fed. Reg. 707, 707 (Dec. 29, 2009), § 1.1(a).   For the fourth requirement, whether "the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to national security," E.O. 13,526 § 1.1(a)(4), the Court remanded the issue to the State Department "for a more fulsome explanation."   Mem. Op. at 18-19, 40.   The State Department provided that more fulsome explanation in its Supplemental Vaughn Index.  *See* State Suppl. Vaughn; *See* JSR and Proposed Briefing Schedule ("November 10 JSR"), ECF No. 30, at 3.   These explanations "provide enough detail to permit the Court to assess the propriety of any individual decision" and "explain how disclosing any particular record would harm national security."   Mem. Op. at 19; *see Larson v. Dep't of State*, 565 F.3d 857, 864-65 (D.C. Cir. 2009); *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("[L]ittle proof or explanation is required beyond a plausible assertion that information is properly classified.").   Courts must accord "substantial weight" to agency affidavits concerning classified information, *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987), and should defer to the expertise of agencies involved in national security and foreign policy, particularly to those agencies' articulations and predictive judgments of potential harm to national security.  *See*, *e.g.*, *Larson*, 565 F.3d at 864-65.

22

Plaintiff concedes that the State Department's submissions are "more detailed," but argues they are neither logical nor plausible.  Pl's MSJ at 37.  In support, Plaintiff only cites to three examples.  None of these examples constitutes contrary record evidence.  *See Larson*, 565 F.3d at 864-65.  Plaintiff argues that the withheld information on SIGAR-(b)(1)-00181 could not possibly have been "provided to the U.S. government in confidence," Pl's MSJ at 38, but this argument misses the mark, as the State Department explained that the information in SIGAR-(b)(1)-00177 was withheld pursuant to section 1.4(d), which encompasses foreign relations and foreign activities of the United States more broadly.  E.O. 13,526 § 1.4(d); *see* State Suppl. Vaughn at 2-3 (describing why all of the withheld information in SIGAR-(b)(1)-00177 satisfies the fourth requirement for classification).  As for the withheld information specifically on SIGAR-(b)(1)-00181, the State Department describes how release of this information "would be reasonably likely to harm ongoing U.S. security cooperation with partners engaged in counter-terrorism efforts in Afghanistan."  Third Stein Decl. ¶ 9; State Suppl. Vaughn at 2-3.  Plaintiff notes that a lessons learned report cites to this ROI.  *See* Pl's MSJ at 38.  But drawing from an ROI for a proposition or summary of past events does not constitute the same harm as releasing the withheld information in the ROI itself, which comprises specific and first-hand views and assessments of a U.S. General.  Third Stein Decl. ¶ 9.  To the extent Plaintiff is arguing waiver by official acknowledgment, it has not met its burden to show that the information sought is "as *specific* as the information previously released" or that it "match[es] the information previously disclosed."  *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (internal quotations and citation omitted); *see* Third Stein Decl. ¶ 9; *infra* at 37-42 (noting that the test for prior disclosure is strict and that neither prior disclosure of similar information nor a reporter's speculation or guess that a thing may be so satisfies the test);

23

*Morley*, 508 F.3d at 1124 ("The insistence on exactitude recognizes the Government's vital interests in information relating to national security and foreign affairs.") (internal quotations and citation omitted).

Plaintiff's argument that General David Richards and Ambassador Richard Boucher could not possibly have provided classified information to SIGAR is also unavailing. Pl's MSJ at 38-39. Courts have rejected similar arguments made by FOIA requesters. *See*, *e.g.*, *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 79-80 (D.C. Cir. 1987) (accepting classification officer's national security determination even though more than 100 ambassadors did not initially classify the information); *Van Atta v. Def. Intel. Agency*, No. 87-1508, 1988 WL 73856, at *1-2 (D.D.C. July 6, 1988) (finding plaintiff's affidavit that a diplomat was willing to discuss the issue with him did not undercut the agency's rationale for withholding the documents). Plaintiff ignores that information can be classified after receipt of the FOIA request, as was the case here. *See* Mem. Op. at 17 (quoting E.O. 13,526 § 1.7(d)); Third Stein Decl. ¶ 7; Stein Decl. ¶ 10; *see*, *e.g.*, *Darui v. U.S. Dep't of State*, 798 F. Supp. 2d 32, 42 (D.D.C. 2011) (approving State Department's classification of documents pursuant to Section 1.7(d) of E.O. 13,526). Plaintiff also ignores that SIGAR is an inspector general, not a "U.S. government historian[.]" Pl's MSJ at 38. As an inspector general within the U.S. Government, SIGAR made sure that any information shared during the interviews was evaluated for national security concerns. Fifth Hubbard Decl. ¶ 32; Hubbard Decl. ¶ 34.

Plaintiff's challenges to the withholding of informants' names also lack merit. *See* Pl's MSJ at 38-39. The State Department explains why information in SIGAR-(b)(1)-00183 was withheld. Third Stein Decl. ¶ 10; State Suppl. Vaughn at 3-4. Even if the Afghani individual

24

identified in SIGAR-(b)(1)-00186 is or may have been a public official, his or her particular involvement with and assistance to the United States is not well known.  *Id.*  Release of his or her name would reasonably be expected to increase the risk of threats to this individual such as harassment or physical harm, would compromise U.S. security tactics, cooperation, and plans with key allies engaged in counter-terrorism efforts in Afghanistan, and would jeopardize the United States' ability to work with local government leaders.  *Id.*  Similarly, the State Department withheld information in SIGAR-(b)(1)-00105 that addresses security and foreign policy plans and relationships of a sensitive nature.  *Id.* ¶ 11; State Suppl. Vaughn at 5-6.  What may appear as harmless information to Plaintiff, is in fact "highly sensitive" information that if released "could be exploited by extremist groups in direct opposition to U.S. objectives for peace and security in Afghanistan" and "would thereby jeopardize . . . the United States' ability to work with local government leaders."  Third Stein Decl. ¶ 11.

Finally, because the Government has met its burden by providing sufficiently detailed submissions, Plaintiff's request for *in camera* review is neither necessary nor appropriate.  *See Mobley*, 806 F.3d at 588; Pl's MSJ at 39, n.16.  Such review is discretionary and unwarranted here where Plaintiff has not shown that the Government's submissions are lacking in detail, let alone pointed to contrary record evidence or evidence of bad faith.  *Mobley*, 806 F.3d at 588; *see ACLU v. Dep't of Justice*, 640 F. App'x 9, 12 (D.C. Cir. 2016) (holding that because plaintiff failed to point to any officially acknowledged, duplicate information, *in camera review* was unnecessary to determine whether the information was properly withheld).  As the D.C. Circuit cautioned, such review "is particularly a last resort in national security situations."  *Mobley*, 806 F.3d at 588

25

(quoting *Larson*, 565 F.3d at 870) (internal quotations omitted).   For these reasons, the Government's Exemption 1 withholdings should be upheld.

### D.  SIGAR Properly Withheld Information Under Exemption 5

On behalf of the NSC, SIGAR is asserting Exemption 5 to withhold a limited amount of information in 11 ROIs.  Fifth Hubbard Decl. ¶ 22.  Although the records could have been properly withheld under Exemption 5 in their entirety, SIGAR` chose to redact only a small amount of information, using its discretion to disclose more than was necessary.  *See* Hubbard Decl. ¶ 46, 48. Plaintiff faults SIGAR for over-disclosing.  Plaintiff's argument that all of the information should have been released would discourage the government from making discretionary disclosures in the future out of fear that release of just a portion of a document would forgo protection of the entire document.  *See* Pl's MSJ at 26; *Mehl v. EPA*, 797 F. Supp. 43, 48 (D.D.C. 1992) ("[P]artial disclosure of the contents of a document does not constitute a waiver of the applicable FOIA exemptions for the entire document."); *see also Pub. Citizen*, 11 F.3d at 203.

SIGAR's declarations and Vaughn establish that the withheld information is subject to the deliberative process privilege or the presidential communications privilege.  Fifth Hubbard Decl. ¶¶ 22-26; Fourth Hubbard Decl. ¶¶ 51-71; Second Vaughn Index for Exemption 5 Withholdings ("Second Exemption 5 Vaughn").   Where SIGAR is asserting both privileges, the Court may uphold the redactions under either one for SIGAR to prevail.  *See ACLU v. Dep't of Def.*, 628 F.3d 612, 623 n.3 (D.C. Cir. 2011); *Larson*, 565 F.3d at 862-63.

### a.  SIGAR Properly Withheld Information Pursuant to the Deliberative Process Privilege

SIGAR has established that the 11 ROIs are both predecisional and deliberative. [12]  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Although to satisfy the predecisional prong, SIGAR "need not point to an agency final decision," the policy decision at issue here is clear: what recommendations should SIGAR make to Congress and the Executive Branch in a lessons learned report.  *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)); *see* Fourth Hubbard Decl. ¶ 58; Hubbard Decl. ¶ 7.  SIGAR created the ROIs to gather information for a specific lessons learned report or in some cases to inform the development of other lessons learned reports.  *See* Fourth Hubbard Decl. ¶¶ 56-60; Hubbard Decl. ¶¶ 47-48; Hubbard Suppl. Decl. ¶¶ 6-12; Second Exemption 5 Vaughn. [13]  SIGAR need only point to a "deliberative *process*" and the "role played by the documents at issue in the course of that *process*."  *Coastal States Corp.*, 617 F.2d at 868 (emphasis added).  It is irrelevant that one of the reports, *Strategy and Planning*, is "unfinished."  Pl's MSJ at 28; *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975) (extending protection to records that are part of the decisionmaking process even where process does not produce actual agency decision); *see also Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 360 (1979) (finding that a document can be predecisional in nature even when an agency subsequently makes a final decision on the issue discussed in the document, because the privilege

---

[12]  Plaintiff appears to concede that the ROIs are predecisional by only arguing that SIGAR has not shown that they "are deliberative, that the interviewees were 'consultants,' or that foreseeable harm would result from disclosure."  Pl's MSJ at 26; *see id.* at 26-31.

[13] For example, approximately seven ROIs summarize interviews that were conducted to gather information for what was to be SIGAR's planned lessons learned report on *Strategy and Planning*, which SIGAR now anticipates publishing in 2021.  *See* Fourth Hubbard Decl. ¶ 56; Second Exemption 5 Vaughn.

serves to protect the deliberative process itself, not merely the document).  SIGAR explains that the ROIs were part of an integral process whereby superiors within SIGAR used the ROIs to decide what to include or not include in a lessons learned report.[14]  That the ROIs were passed on "from a subordinate," who had no authority to speak for SIGAR, "to a superior official" further reinforces their predecisional nature.  *Coastal States*, 617 F.2d at 868; *see Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184-85 (1975); Fourth Hubbard Decl. ¶ 57; Hubbard Suppl. Decl. ¶¶ 8-12.

As for the deliberative prong, SIGAR has demonstrated that the withheld information "reflects the give-and-take of the consultative process."  *Coastal States*, 617 F.2d at 866.  As Plaintiff acknowledges, even "[p]urely factual material" may be withheld where it reflects an "'exercise of discretion and judgment calls.'"  *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993)); *see* Pl's MSJ at 29.  The ROIs reflect the interviewers' judgment as to what to write or not write down; these notes are the interviewers' extraction of pertinent material from a larger universe of facts.  Hubbard Decl. ¶ 47.  Courts have "routinely" found such interview notes and summaries "to be subject to Exemption 5."  *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 165, 170 (D.D.C. 2017); *see Mapother*, 3 F.3d at 1537-39; *Russell*

---

[14] *See* Fourth Hubbard Decl. ¶¶ 57-59 (describing how the ROIs were the interviewer's personal judgment regarding what information provided is important and should be reported to others within SIGAR); *id.* ¶ 57 (describing that the information summarized in the ROIs contributed to, or, with regards to the anticipated *Strategy and Planning* report, is contributing to the development of recommendations to Congress and the Executive Branch for each lessons learned report); *see also* Hubbard Decl. ¶ 47, 48 (describing how the ROIs were intended to facilitate development of SIGAR's final position on the relevant issue in a future report and to provide background information to enable senior officials within SIGAR to select a course of action).

*v. Dep't of the Air Force*, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982) (finding pages sought from draft manuscript used for final history "would reveal what material supplied by subordinates senior officials judged appropriate for the history and what material they judgment inappropriate" which is the kind of "disrobing of an agency decision-maker's judgment" Exemption 5 was designed to protect).  Plaintiff's effort to distinguish the cases SIGAR cites fails.  Pl's MSJ at 29-30.  The task assigned to the staff in *Mapother* is very similar to that assigned to the SIGAR interviewers.  *See Mapother*, 3 F.3d at 1538; Hubbard Decl. ¶¶ 24 n.4, 47, 48; Fourth Hubbard Decl. ¶¶ 56-60.  And Plaintiff fails to show how the records of interviews in *Hardy* "reveal [an] investigative strategy" any more than those in this case.  Pl's MSJ at 30; Hubbard Decl. ¶¶ 64-66 (describing how the ROIs are part of SIGAR's law enforcement mission).

The withholdings in the ROIs are consistent with the purposes of the privilege.  *See Russell*, 682 F.2d at 1048 (noting three policy bases for the privilege).  If the interviewer or SIGAR knew the notes were going to be released in full, they likely would have "'temper[ed] [their] candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.'"  *Coastal States*, 617 F.2d at 866 (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)).  The ROIs are unverified and potentially inaccurate representations of what the informant said at the interview.  Fourth Hubbard Decl. ¶ 59; Hubbard Decl. ¶ 47, 48.  Their release would thus inaccurately reflect SIGAR's understanding of the facts, cause public "confusion" about those facts, and affect SIGAR's drafting of its anticipated 2021 *Strategy and Planning* lessons learned report.  *Russell*, 682 F.2d at 1048; Fourth Hubbard Decl. ¶¶ 58, 60.

Plaintiff's argument that SIGAR has not met the foreseeable harm requirement also lacks merit.  Whether SIGAR uses the word "could" or "would" in its declaration is not the test.  Pl's

29

MSJ at 31-32. SIGAR need only "describe[] the specific harms to the deliberative process that would result from disclosure of the information." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, No. 17-cv-1283, 2020 WL 6939807, at *6-7 (D.D.C. Nov. 25, 2020). SIGAR has provided the requisite level of detail for this specific context. Fourth Hubbard Decl. ¶¶ 59, 60; *see Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020) ("The degree of detail necessary to substantiate a claim of foreseeable harm is context-specific."). It is not difficult to comprehend how the quality of SIGAR's lessons learned reporting would suffer if SIGAR interviewers were discouraged from taking comprehensive notes and writing down their thoughts out of fear that such notes would be disclosed. It is also not difficult to understand how the public's understanding of the facts would suffer if potentially inaccurate representations of what an informant said and SIGAR's position on that issue were released, especially prior to the publication of the forthcoming *Strategy and Planning* lessons learned report.[15] *See* Fourth Hubbard Decl. ¶ 59; Hubbard Decl. ¶ 47, 48.

As described in the Fifth Hubbard Declaration and in the Second Exemption 5 Vaughn, five ROIs also contain withheld information pertaining to the decision-making structure and process of *NSC*, not SIGAR, although SIGAR discusses NSC's decision-making structure and process in its *Stabilization*: *Lessons from the U.S. Experience in Afghanistan* (May 2018) lessons learned report. Fifth Hubbard Decl. ¶ 23; Second Exemption 5 Vaughn. That information is predecisional because it pre-dates various policy decisions by NSC and the White House regarding Afghanistan such as decisions regarding troop levels. *Id.* Such information is deliberative because it "reflects the give-and-take of the consultative process" at NSC, including recommendations and

---

[15] Plaintiff's own *Responses* article demonstrates that the ROIs may be inaccurate. *Infra* at n.17.

discussions among and between the President and his staff.  *Coastal States*, 617 F.2d at 866; *id.*
The disclosure of such information would negatively impact the quality of presidential decision-making by discouraging NSC subordinates and superiors from engaging in open and frank discussions on matters of high importance.  Fifth Hubbard Decl. ¶ 23; Second Exemption 5 Vaughn.   Because the withholdings are potentially inaccurate notes of unverified facts and observations, the release of this information would also risk causing public confusion about those facts.  Fifth Hubbard Decl. ¶ 23; Second Exemption 5 Vaughn.

Plaintiff faults SIGAR for invoking the consultant corollary, but SIGAR need not rely on this "corollary" to the Exemption 5 threshold because it is clear that the ROIs in this case were "intra-agency memorandums or letters."  5 U.S.C. § 552(b)(5); *see* Pl's MSJ at 30-31.  The ROIs were created by SIGAR and were not shared with anyone outside the U.S. Government.  Fifth Hubbard Decl. ¶ 26.

In sum, SIGAR's very limited withholdings are well within the boundaries of the deliberative process privilege and should be upheld.

### b.  SIGAR Properly Withheld Information Pursuant to the Presidential Communications Privilege

#### i.  SIGAR Did Not Waive Its Right To Assert the Presidential Communications Privilege in 6 Documents At This Stage of the Proceedings.

SIGAR has not waived its right to invoke the presidential communications privilege on behalf of the NSC in 6 documents.  Like the deliberative process privilege, the presidential communications privilege falls within Exemption 5, which SIGAR has invoked from the beginning.  *See* SIGAR Memorandum in Support of its Motion for Summary Judgment, ECF No. 19-1, at 19-23; *see also Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir.

31

2004) (applying the presidential communications privilege under Exemption 5 of the FOIA). Plaintiff concedes that the deliberative process privilege and presidential communications privilege overlap in that if one is not upheld, the same material "would be adequately protected" by the other.  Pl's MSJ at 25-26.  Plaintiff relies on cases in which the government attempted to raise a new FOIA exemption outside "the original proceedings before the district court."  *Ryan v. Dep't of Justice*, 617 F.2d 781, 792 (D.C. Cir. 1980); *see* Pl's MSJ at 23-24 (citing cases on or after appeal in which the government attempted to raise a new exemption).  Here, however, we are in the "*original district court proceedings*," *Maydak v. Dep't of Justice*, 218 F.3d 760, 765 (D.C. Cir. 2000) (emphasis added), and the Court has yet to "rule on" Exemption 5.  *Id.* ("[T]he government must assert the exemption in such a manner that the district court can rule on the issue."); *see* Mem. Op. at 40 (denying Defendant's motion for summary judgment "without prejudice pending the receipt of any supplemental information in accordance with this opinion"). Courts have permitted the government to raise additional exemptions when the district court proceedings are not completed and the plaintiff has an opportunity to respond, as is the case here. *See*, *e.g.*, *Reliant Energy Power Generation v. FERC*, 520 F. Supp. 2d 194, 201-02 (D.D.C. 2007) (concluding that agency did not waive the right to claim Exemption 4 by raising claim in second motion for summary judgment because the court's denial of agency's first motion for summary judgment was not ruling in plaintiff's favor, as plaintiff's own motion for summary judgment was also denied); *Judicial Watch, Inc. v. Dep't of Justice*, 102 F. Supp. 2d 6, 12 & n.4 (D.D.C. 2000) (explaining that agency may not raise exemption for first time in brief replying to plaintiff's response to motion for summary judgment, but my raise it in future motion for summary judgment, thereby affording plaintiff opportunity to respond); *Williams v. FBI*, No. 91-cv-1054, 1997 WL

198109, at *2 (D.D.C. Apr. 16, 1997) (finding, in case where exemption was raised first in motion for reconsideration, that "policy militating against piecemeal litigation is less weighty where the district court proceedings are not yet completed").

The D.C. Circuit has made clear that it did not intend to "adopt[] a rigid 'press it at the threshold or lose it for all times' approach to . . . agenc[ies'] FOIA exemption claims." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 581 (D.C. Cir. 1987)).  SIGAR's failure to invoke the presidential communications privilege in addition to the deliberative process privilege on behalf of the NSC in its initial round of summary judgment briefing was due to "simple human error," not any "kind of tactical maneuvering." *Id.* at 701; Fifth Hubbard Decl. ¶ 26.  Plaintiff is not prejudiced in any way because it has the opportunity to respond, as it has already done so here, *see* Pl's MSJ at 24-26, and SIGAR's assertion of this additional privilege in only 6 documents has done nothing to "delay the ultimate resolution of the disclosure request."  Pl's MSJ at 23 (quoting *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009) in describing the "general" policy goals of ensuring that all FOIA exemptions are raised in the initial district court proceedings).  Accordingly, SIGAR has not waived its ability to assert the presidential communications privilege in 6 documents.

### ii.  The Presidential Communications Privilege Applies to Protect Limited Material in 6 Documents.

Plaintiff's arguments that SIGAR has failed to establish the presidential communications privilege to protect limited withholdings in 6 documents lack merit.  Pl's MSJ at 24-26.  First, SIGAR's submissions are sufficiently detailed.  SIGAR explained that the ROIs contain descriptions or narratives of frank, confidential communications made in the course of preparing information or advice on matters of presidential decision-making or in some cases confidential

communications made directly with the President.  Fourth Hubbard Decl. ¶ 61; Second Exemption 5 Vaughn.  It described that the communications fall into two groups: (1) communications involving the President, a close advisor to the President, or a member of the staff of a close adviser to the President on matters of presidential decision-making, designated in the Second Exemption 5 Vaughn Index as "PCP-1"; and (2) communications on January 12, 2009 between transition officers or staff that concern potential presidential decisions after the Inauguration and involved the President-elect himself, a Transition official designated to be a close adviser to the President-elect, or a member of the staff of such a Transition official, designated in the Vaughn Index as "PCP-2."  Fourth Hubbard Decl. ¶¶ 63-67, 69-70; Fifth Hubbard Decl. ¶ 25 (adding the Vice President to the list of individuals or entities in the PCP-1 category described in the previous declaration); Second Exemption 5 Vaughn.  It also noted that the subject of the communications related to the policy priorities for the President to consider, notably U.S. policy in Afghanistan involving troop levels, deployments, and the "surge."  Fourth Hubbard Decl. ¶¶ 68, 71.  Plaintiff provides no support for its argument that SIGAR must explain what each individual official's "'involvement' entailed" and which specific "advisers were involved in which communications." Pl's MSJ at 24.  It is sufficient that the communications involved the "types of advisers" covered by the privilege and that they concerned "official government matters."  *Leopold v. Dep't of Justice*, --- F.3d ---, Nos. 19-cv-1278, 19-cv-1626, 2020 WL 5253897, at *9 (D.D.C. Sept. 3, 2020); *see Protect Democracy Project v. NSA*, 453 F. Supp. 3d 339, 347 (D.D.C. 2020) (finding that a communication "that directly related to presidential decision-making with respect to foreign relations" falls within the presidential communications privilege), *denying hearing en banc*, No. 20-5131, 2020 WL 4135125 (D.C. Cir. Jul. 7, 2020).

Second, Plaintiff selectively quotes out of context from the Exemption 5 Vaughn Index to argue, without any support or explanation, that the information is "not the content of any presidential communication," ignoring the remainder of the Exemption 5 Vaughn Index descriptions for each document and that SIGAR's declaration identifies the subject of the communications.  Pl's MSJ at 24-25; Exemption 5 Vaughn; Second Exemption 5 Vaughn; Fourth Hubbard Decl. ¶¶ 68, 71; *see In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) (privilege extends to "communications made by presidential advisers in the course of preparing advice for the President . . . even when these communications are not made directly to the President" and to "communications authored or solicited and received by those members of an immediate White House adviser's staff").

Third, this Court should reject Plaintiff's unfounded argument that the presidential communications privilege cannot apply to communications during a presidential transition period. Pl's MSJ at 25-26.   A president must be able to make important decisions beginning on Inauguration Day, which cannot happen without prior candid advice from his or her staff.  Another court in this District recently upheld the government's assertion of the presidential communications privilege over transition-period communications.  *See Leopold*, 2020 WL 5253897, at *8-10 (upholding government's withholding pursuant to the presidential communications privilege for communications including those "between transition officers or staff that concern potential presidential decisions after the inauguration").[16]   Here, such

---

[16]   Contrary to Plaintiff's assertion, Pl's MSJ at 25 n.12, the government did litigate whether the privilege covers transition-period communications, *see Leopold v. Dep't of Justice*, No. 1:19-cv-1278-RBW, ECF No. 62 at 21-23, and Judge Walton upheld the government's assertion of the privilege over communications including those "between transition officers or staff that concern potential presidential decisions after the inauguration."  *Leopold*, 2020 WL 5253897, at *8-10.

communications are located solely on page SIGAR-LL-01-00108.   Hubbard Decl. ¶¶ 66-68;
Second Exemption 5 Vaughn at 4.   SIGAR makes clear that this material reveals information
between advisors and President-Elect Obama on topics of presidential decision-making post-
inauguration.   Exemption 5 Vaughn at 4.   Such deliberations therefore are distinguishable from
the case Plaintiff cites where the government sought to extend the privilege to "executive branch"
officials and documents far removed from "the White House."   Pl's MSJ at 25 (citing *Judicial
Watch, Inc. v. Dep't of Justice*, 365 F.3d at 1116-17).

       Finally, SIGAR has sufficiently identified the foreseeable harm that would result if the
information withheld pursuant to the presidential communications privilege were disclosed.
SIGAR provides "context or insight into the specific decision-making processes or deliberations
at issue."   *Ctr. for Investigative Reporting v. U.S. CBP*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019);
*see* Fourth Hubbard Decl. ¶¶ 68, 71 (describing that the deliberations involve "the ordering of
policy priorities for the President to consider" and U.S. policies regarding Afghanistan such as
troop levels, deployments, and the "surge."); Second Exemption 5 Vaughn.   SIGAR then explains
that disclosure of such communications would prevent the President from discharging his duties
under Article III of the Constitution because it would stifle the President or President-elect and his
advisors from speaking candidly and freely.   Fourth Hubbard Decl. ¶¶ 72-74; Exemption 5
Vaughn.   On such controversial and challenging subjects as the ordering of policy priorities and
U.S. policies in Afghanistan, it is clear that government policy-making would suffer if private
communications between a President and his close advisors, a President-elect and his closer
advisors, and a President-elect and the outgoing administration, were released.   *See id.*  Based on

similar submissions and for similar reasons, another court in this District held that the Government

had met the foreseeable harm requirement, as this Court should here.  *Leopold*, 2020 WL 5253897,

at *4 n.4.  For all of these reasons, SIGAR's limited Exemption 5 withholdings should be upheld.

## II.    Plaintiff Has Failed To Meet Its "High" Burden to Establish That the Withheld Information Has Been Waived Through Prior Disclosure.

Plaintiff would have this Court believe that some of the withheld information has been

waived through official public disclosure or by the parties affected by such disclosure.  *See*, *e.g.*,

Pl's MSJ at 15 n.7, 36, 38, 39-43.  This is incorrect.  *See* Fifth Hubbard Decl. ¶¶ 3, 17-19; Fourth

Hubbard Decl. ¶ 75.  Plaintiff bears the burden of establishing that an official public disclosure

has occurred, such that the Government cannot rely on an otherwise valid exemption.  *See Davis*

*v. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992); *ACLU v. CIA*, 710 F.3d 422, 427 (D.C.

Cir. 2013); *Boehm v. FBI*, 948 F. Supp. 2d 9, 30-31 (D.D.C. 2013).  Plaintiff must show that the

information requested (1) is "as specific as the information previously released," (2) "match[es]"

the information previously disclosed," and (3) has "already been made public through an official

and documented disclosure."  *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  The D.C.

Circuit has held that this test "is quite strict," *ACLU*, 640 Fed. App'x at 11, and poses a "high

hurdle for a FOIA plaintiff."  *Pub. Citizen*, 11 F.3d at 203.

Plaintiff has not met that high burden here.  First, other than the informant in SIGAR-

(b)(1)-00132, *see* Fifth Hubbard Decl. ¶¶ 20, 33, Plaintiff has presented no evidence that the

informants publicly identified themselves with a particular ROI; in other words, Plaintiff has not

established that the informants have waived their privacy interests or consented to the release of

the remaining information in their ROIs.  See *Boehm*, 948 F. Supp. 2d at 30-31.  For example,

Plaintiff claims that Haass, Chayes, and Rubin voluntarily spoke to the *Post* or otherwise

commented about their alleged interviews in Plaintiff's Responses article.  Pl's MSJ at 15 n.7.

This article, however, does not state that the individuals named in that article associated

themselves with a particular ROI.  *Supra* at 7-8.  Instead, the article is a representation by the

Post that these individuals either made general comments on a topic or expressed skepticism

when the Post tried to "guess" whether they were the informant in a particular ROI.[17]  Courts

have required FOIA requesters to make a stronger showing, such as provide "an authorization

signed by" the individuals consenting to the release of their names and identifying information,

prior to finding waiver.  *Campo*, 2020 WL 3966874, at *9.

    Even if the informants had consented to the release of their identity in connection with a

particular piece of information, that consent would not extend to the release of their name

associated with *other* information they provided to SIGAR.[18]  This was standard practice, as

---

[17] *See* Responses article ("Chayes's additional comment: The quote as you have it from the SIGAR notes doesn't really sound like me . . . Rubin's additional comment: I am surprised I said that.  Maybe the notes are wrong. . . . Taxell's additional comment: I must admit that I don't recognize the specific language attributed to me by SIGAR.").

[18] *See* Fifth Hubbard Decl. ¶¶ 3, 11, 12, 19; Fourth Hubbard Decl. ¶ 41; *see Reporters Comm.*, 489 U.S. at 770-71 (finding "substantial" privacy interest in rap sheets even though they contain information previously disclosed to the public); *Shapiro v. Dep't of Justice*, No. 12-cv-313, 2020 WL 3615511, at *32 (D.D.C. July 2, 2020)("The public mention of an individual's name in one context does not preclude the FBI from withholding it in another."); *Fitzgibbon*, 911 F.2d at 765 ("The mere fact that the CIA voluntarily transmitted an official document to a congressional committee does not mean that the agency can thereby automatically be forced to release any number of other documents."); *EPIC v. Dep't of Justice*, 584 F. Supp. 2d at 65, 71 (D.D.C. 2008) ("[J]ust because some information about the TSP has become public, it does not follow that releasing the documents poses any less of a threat to national security."); *ACLU v. Dep't of Def.*, 628 F. 3d 612, 625 (D.C. Cir. 2011) ("[W]e have repeatedly rejected the argument that the government's decision to disclose some information prevents the government from withholding other information about the same subject.") (citing cases); *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (in the context of Exemption 7(C), finding that individual still maintained a privacy interest in avoiding disclosure of details not in the public domain); *Petrucelli v. Dep't of Justice*, 153 F. Supp. 355, 362 (D.D.C. 2016); *Greenberg v. US. Dep't of Treasury*, 10 F. Supp. 2d 3, 30 (D.D.C. 1998) ("[T]he fact that the individuals may have already

SIGAR was cognizant of its obligations under the IG Act to protect the identities and privacy interests of its sources absent their consent to be publicly identified.  *See* Fifth Hubbard Decl. ¶ 18; Hubbard Suppl. Decl. ¶ 13; Hubbard Decl. ¶¶ 41, 50, 53.  Throughout its memorandum, Plaintiff claims to know the informant for particular ROIs.  *See*, *e.g.*, Pl's MSJ at 36, 40-42.  Individuals maintain interests in their privacy interests, however, even if the requester thinks it already knows, or is able to guess, their identity.  *See Fitzgibbon*, 911 F.2d at 765 (A reporter's speculation or "guess that a thing may be so" does not satisfy the official acknowledgment test.); *Weisberg v. Dep't of Justice*, 745 F. 2d 1476, 1491 (D.C. Cir. 1984); *Whalen v. U.S. Marine Corps*., 407 F. Supp. 2d 54, 59 (D.D.C. 2005) (noting that a requester's "educated guess" as to contents of a withheld report does not constitute a waiver of a FOIA exemption).  For Exemption 7(D), "[e]ven if the identity of or information provided by a source ha[s] been disclosed . . . a government agency still invokes [the exemption] to protect his or her identity."  *Higgins v. Dep't of Justice*, 919 F. Supp. 2d 131, 147 n.6 (D.D.C. 2013); *Parker*, 934 F.2d at 378-80 ("Absent from the language of Exemption 7(D) is any mention of 'waiver.'"); *Davis*, 968 F.2d at 1281.

Plaintiff incorrectly claims that some ROIs were "on the record."  Pl's MSJ at 40-41 n. 17.  In fact, the agreement between certain informants and SIGAR had an additional caveat.  Fifth Hubbard Decl. ¶ 6 & n.1.  For instance, the informants in SIGAR-LL-07-00025, SIGAR-LL-07-00030, and SIGAR-LL-07-00078 agreed to be "on the record but check back on quotes for accuracy."  As SIGAR explains, such notations meant that the informants did not consent to the release of their names associated with the information in the ROI "without first obtaining

---

been publicly disclosed as targets of the FBI's investigation does not diminish their privacy interests in having the tapes of their conversations . . . withheld.").

permission." Fifth Hubbard Decl. ¶ 6 & n.1.  All interviews marked with the prefix "SIGAR-LL-04," were conducted on a not-for-attribution basis, partly because of safety concerns given the subject matter.  Fifth Hubbard Decl. ¶ 8; *see* Pl's MSJ at 41 (listing "04" interviews). Informants with ROIs where the "non-attribution basis" box is checked "yes" also sought confidentiality.  Fifth Hubbard Decl. ¶ 5; *see* Pl's MSJ at 42 (listing ROIs with "non-attribution basis" box checked).  If SIGAR selectively quoted from an ROI, it did so only after first "verifying the accuracy of the quote and obtaining permission from the informant."  Fifth Hubbard Decl. ¶ 12.  The informants still retain privacy interests in their name associated with any information to which they did not consent to release.[19]  *Supra* at n.18.

Second, Plaintiff has not met its burden to show that the information publicly disclosed is as specific and matches the information being withheld.  *See Higgins*, 919 F. Supp. 2d at 146-47. A plaintiff must demonstrate "that there is a permanent public record of the *exact* portions he wishes."  *Davis*, 968 F.2d at 1280 (emphasis added) ("[O]ur public domain cases . . . require the requester to point to 'specific' information identical to that being withheld.").  He "cannot simply show that similar information has been released."  *Pub. Citizen*, 11 F.3d at 201-02; *see ACLU*, 640 Fed. App'x at 11.  A court "must be confident that the information sought is *truly public* and that the requester receive no more than what is publicly available."  *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999) (emphasis added).  If the withheld information "would reveal more than what is publicly available," there has been no waiver.  *EPIC*, 2020 WL 5816218, at *6-7

---

[19] As an inspector general, SIGAR has an obligation to protect this information pursuant to Exemptions 3, 6, 7(C), and 7(D).  *See* Fifth Hubbard Decl. ¶¶ 11, 12, 18, 19; Fourth Hubbard Decl. ¶¶ 41, 44, 45; *Higgins*, 919 F. Supp. 2d at 147 n.6.

(finding no waiver despite the fact that the identity of one grand jury witness may have been previously disclosed).

SIGAR carefully reviewed each citation and determined that releasing additional information would provide the public with new information not in the public domain.  Fifth Hubbard Decl. ¶¶ 3, 19; Fourth Hubbard Decl. ¶ 75; *see EPIC*, 2020 WL 5816218, at *6-7.  For example, contrary to Plaintiff's assertion, the text of SIGAR-LL-07-00078 is not as specific and does not match the text on page 115 of the May 2018 report; the text of SIGAR-LL-03-00096 is not as specific and does not match the text on pages 59-60 of the September 2016 report; and the text of SIGAR-LL-03-00154 is not as specific and does not match the text on page 4 of the September 2016 report.[20]  *See* Hubbard Suppl. Decl. ¶ 21; Pl's MSJ at 36, 40, 42.  Therefore, although some informants may have agreed to waive their privacy interests with respect to the release of some information in their ROIs, official acknowledgment of their identity as the informant in a particular ROI "would reveal more than what is publicly available."  *EPIC*, 2020 WL 5816218, at *6-7 (finding no waiver despite the fact that the identity of one grand jury witness may have been previously disclosed); *see Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("[T]he fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption.").  If the withheld information were "truly public," Plaintiff would have no need to pursue this litigation. Plaintiff here appears to be arguing waiver with the hopes of receiving official acknowledgment

---

[20] There are also instances where Plaintiff asserts that the report "quoted" an informant, but in fact the report only cited the ROI and there are no quotation marks.  *See, e.g.,* Pl's MSJ at 41 (noting that the June 2018 report "quot[es]" the informant in SIGAR-LL-04-0005); *Compare* June 2018 Report n. 149 (citing, but not quoting June 17, 2015 interview).

of information not in the public domain.  *See Reporters Comm.*, 489 U.S. at 764 ("Indeed, if the summaries were 'freely available,' there would be no reason to invoke the FOIA to obtain access to the information they contain.").  For all of these reasons, Plaintiff has failed to establish the elements of the official acknowledgment test for any of the withholdings.

## CONCLUSION

For these reasons as well as those set forth in Defendant's memorandum in support of its renewed motion for summary judgment, Defendant respectfully requests that the Court deny Plaintiff's renewed cross-motion for summary judgment and grant Defendant's renewed motion for summary judgment.

Dated: March 1, 2021                                   Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ *Sophie Kaiser*
SOPHIE KAISER (NY Bar No. 5239751)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Washington, DC 20005
Phone: (202) 307-2092
Fax: (202) 616-8470
Email: sophie.b.kaiser@usdoj.gov

*Counsel for Defendant*